This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Appellant-defendant Richard D. Callahan has appealed from his convictions in the Summit County Court of Common Pleas for voluntary manslaughter, involuntary manslaughter, both with firearms specifications, having a weapon while under a disability, and conspiracy to commit the illegal manufacture of drugs. This Court affirms in part, and reverses in part.
 I.
On August 6, 2000, Michael Hickman and Jesse Johnson wanted to acquire red phosphorous, a key ingredient in the manufacture of methamphetamines, for resale to a dealer for methamphetamines and money. Friend Jolene Neman advised them that they could get red phosphorous from Callahan, and she helped set up a deal. Hickman and Johnson began to plan to rob Callahan of the red phosphorous.
Hickman and Johnson borrowed a .45 caliber handgun. They emptied the bullets and clip because they did not want anyone to get hurt in the robbery. Johnson secreted the unloaded gun in the waistband of his pants, and they drove to Neman's house at 20 Verdun Drive in Akron, the agreed upon site of the transaction. Hickman and Johnson met Callahan, who demanded $400 for one ounce of red phosphorous. Hickman departed with a small sample, verified its authenticity with a friend, and returned to Neman's house.
At that point Johnson stood up, pointed his gun at Callahan, and said "Just give it to me." Callahan handed the red phosphorous to Johnson, and Johnson turned to leave. Callahan reached for his 9 mm handgun, placed it up against the back of Johnson's head, and said "Wait." Callahan pushed Johnson, who turned and exclaimed "Oh my God," as he came face to face with the gun. Johnson grabbed at Callahan's wrist, and as they grappled, Callahan fired his gun once. The bullet fatally traversed Johnson's left armpit, perforated his left lung and heart, and settled in his back. Neman ran upstairs, while Hickman and another occupant ran outside. As Hickman returned to look after Johnson, Callahan was exiting the house deliberately, his gun held up in the air. Hickman, fearful he would be shot, held up his hands and said: "Stop, please stop, I'm sorry." Callahan walked past Hickman, and departed in his vehicle.
Callahan was indicted on one count of voluntary manslaughter, in violation of R.C. 2903.03(A); one count of involuntary manslaughter, in violation of R.C. 2903.04(A); with a firearm specification attached to each of the foregoing charges in violation of R.C. 2941.145; one count of having a weapon while under a disability, in violation of R.C. 2923.13(A); and two counts of conspiracy to commit illegal manufacture of drugs, in violation of R.C. 2925.04(A) and 2923.01, with a firearm specification attached. Callahan pled not guilty, and the matter proceeded to trial.
Before trial, the state dismissed one count of conspiracy to commit illegal drugs. The jury found Callahan guilty as charged. The trial court sentenced Callahan accordingly.
Callahan timely appeals, asserting three assignments of error.
 II. ASSIGNMENT OF ERROR I
 THE TRIAL COURT ERRED IN THAT THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR II
 THE TRIAL COURT ERRED IN THAT THE JURY'S VERDICT IS BASED ON INSUFFICIENT WHICH DEPRIVED THE DEFENDANT OF DUE PROCESS PURSUANT TO THE 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.
The foregoing assignments of error are considered together as they raise similar issues of law and fact.
In his first and second assignments of error, Callahan argues that each of his convictions was not supported by sufficient evidence. This Court disagrees.
Standards of Review
 The sufficiency of the evidence adduced by the state, and the weight of the evidence adduced at trial are legally distinct issues. State v. Thompkins
(1997), 78 Ohio St.3d 380, 387. In conducting a sufficiency of the evidence review, this Court examines whether the evidence admitted at trial, in a light most favorable to the prosecution, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "In essence, sufficiency is a test of adequacy." Thompkins, supra, at 386.
"While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."State v. Gulley (Mar. 15, 2000), Summit App. No. 19600, unreported. When a defendant asserts that his conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the manifest weight of the evidence must necessarily include a finding of sufficiency. State v. Roberts
(Sep. 17, 1997), Lorain App. No. 96CA006462, unreported. Therefore, a determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency. Id.
Voluntary Manslaughter and Involuntary Manslaughter
 Callahan was convicted of voluntary manslaughter and involuntary manslaughter. The trial court merged these convictions for sentencing purposes.
Voluntary manslaughter is proscribed by R.C. 2903.03(A), which provides:
 No person, while under the influence of sudden passion or in a serious fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another or the unlawful termination of another's pregnancy.
Involuntary manslaughter, R.C. 2903.04(A), states:
 No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.
The underlying felony set forth in the indictment was having a weapon under a disability, which is to say that Callahan possessed a handgun while under a legal disability.
The instant case was a botched drug related robbery that led to a homicide. Johnson pointed an unloaded gun at Callahan and robbed him of his red phosphorous, an expensive constituent part to the manufacture of methamphetamines. As Johnson turned to depart, it was Callahan who drew his gun, followed Johnson into the kitchen, placed the gun up against the back of Johnson's head, and said "Wait." As Johnson turned around he said "Oh my God," and reached for Callahan's wrist. Callahan grabbed Johnson's wrist, and holding the gun, fired once into Johnson's side. This evidence was set forth by direct eyewitnesses and corroborated by the findings of the Medical Examiner Dr. Lisa Kohler[1] and Detective Bill Laughlin of the Akron Police Department.[2]
Upon review of the record, this Court concludes that Callahan's convictions for voluntary manslaughter and involuntary manslaughter were supported by the weight of the evidence. Such a finding necessarily includes a finding of sufficiency. See Roberts, supra.
In passing, Callahan claims that there was insufficient evidence to prove that the handgun he was holding was operable. This Court assumes that Callahan is making this argument as an attempt to vitiate his conviction for the firearm specification. It is well settled that to sustain a conviction for a firearm specification, the operability of the gun must be demonstrated. State v. Murphy (1990), 49 Ohio St.3d 206; R.C. 2941.145(B) and 2923.11(B). Considering that Neman and Hickman saw Callahan shoot Johnson with his gun, Callahan's spurious claim is wholly without merit.
 Having a Weapon While Under a Disability The offense of having a weapon while under a disability is set forth at R.C. 2923.13(A)(3), which states:
 Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
At trial Callahan stipulated that he was under a disability. Both Neman and Hickman saw that Callahan possessed a handgun and used it to shoot and kill Johnson. Accordingly, Callahan's conviction for having a weapon while under a disability was supported by the weight and sufficiency of the evidence.
 Conspiracy to Commit Illegal Manufacture of Drugs Pursuant to this Court's resolution of the third assignment of error, infra, this Court declines to engage in a review of the weight and sufficiency of the evidence for Callahan's conviction on one count of conspiracy to commit illegal manufacture of drugs.
 ASSIGNMENT OF ERROR III
 THE TRIAL COURT ERRED IN PERMITTING THE CHARGE OF CONSPIRACY TO COMMIT THE MANUFACTURE OF DRUGS AS CONTAINED IN COUNT 5 TO BE HEARD BY THE JURY.
In his third assignment of error, Callahan claims that the indictment and conviction for conspiracy is void because the indictment failed to allege an overt act of the conspiracy. See State v. Childs (1999),88 Ohio St.3d 194. The state has conceded Callahan's argument.
Count three of the indictment, prepared by Assistant Prosecuting Attorney Charles E. Kirkwood, reads:
 And the Grand Jurors of the State of Ohio, within and for the body of the County of Summit aforesaid, on their oaths in the name and by the authority of the State of Ohio, DO FURTHER FIND AND PRESENT that RICHARD DWIGHT CALLAHAN, on or about the 6th day of August, 2000, in the County of Summit and State of Ohio, did commit the crime of CONSPIRACY TO COMMIT ILLEGAL MANUFACTURE OF DRUGS in that he did aid or abet another to knowingly manufacture or otherwise engage in any part of the production of Methamphetamine, a Schedule II controlled substance, in violation of Section 2925.04(A)/2923.01 of the Ohio Revised Code, A FELONY OF THE THIRD DEGREE, contrary to the form of the statute in such case made and provided against the peace and dignity of the State of Ohio.
(Emphasis in original.) Careful review of count three in the indictment reveals that there is no language specifically detailing any overt act done in furtherance of the conspiracy. See Childs, supra, at 197-198. The language used in count three merely generically tracks the applicable statute. Pursuant to the controlling authority of Childs, this Court is compelled to agree that the indictment and conviction for conspiracy is void for failure to specifically allege an overt act of the conspiracy apart from the generic language of the statute. Callahan's third assignment of error is sustained, and his conviction for conspiracy is vacated.
 III.
Callahan's convictions for voluntary manslaughter, involuntary manslaughter, with firearm specifications, and having a weapon while under a disability are affirmed. Callahan's conviction for conspiracy to commit illegal manufacture of drugs is vacated pursuant to the controlling authority of Childs.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
DONNA J. CARR, BAIRD, P.J., WHITMORE, J. CONCUR.
[1] The autopsy of Johnson revealed injuries consistent with the evidence provided by direct eyewitnesses.
[2] Detective Laughlin discovered a lone 9 mm round in the kitchen on a stove.